IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MORRIS LEWIS KOPP,                                                CV 03-222-MA

            Petitioner,            AMENDED OPINION AND ORDER

   v.

JEAN HILL,

           Respondent.

   JANE E. ELLIS
   621 SW Morrison, Suite 1414
   Portland, OR 97205

      Attorney for Petitioner

   HARDY MEYERS
   Attorney General
   LYNN DAVID LARSEN
   Assistant Attorney General
   Department of Justice
   1162 Court Street NE
   Salem, OR 97301-6313

      Attorneys for Respondent

1 - AMENDED OPINION AND ORDER

MARSH, Judge.

Petitioner, an inmate in the custody of the Oregon Department of Corrections, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, petitioner's habeas corpus petition (#2) is denied.

## BACKGROUND

Following a jury trial, on April 11, 1997, petitioner was convicted of Assault in the First Degree (two counts), Assault in the Second Degree (three counts), Assault in the Third Degree (one count), and Criminal Mistreatment (one count). Resp. Exhibit 101. Petitioner was sentenced to a total of 546 months imprisonment. Resp. Exhibit 101 at 58-62.

The victims were petitioner's infant son, and petitioner's toddler step-daughter. Testimony at trial revealed that in late 1995 and early 1996 petitioner repeatedly threw his infant son against a wooden crib rail, and shook him causing a skull fracture, retinal hemorrhaging, and irreversible brain damage. Tr. (1/30/98) at 17. The infant's right tibia and femur were fractured during the abuse. Id. at 23-24. Further, petitioner assaulted his toddler step-daughter by "striking her on the back with an incense burner." Id. Since petitioner's trial, his

infant son has died from these injuries.  Resp. Exhibit. 112 at 2.

Petitioner's wife, Sharon Kopp, was also indicted on assault and mistreatment charges arising out of the same physical abuse of the two children.  The two defendants were tried together.  The jury found Sharon Kopp guilty of Assault in the First Degree (one count), Assault in the Second Degree (two counts), and Assault in the Third Degree (one count), and Criminal Mistreatment (one count).

Petitioner directly appealed his convictions and sentences.  The Oregon Court of Appeals affirmed without opinion, State v. Kopp, 165 Or. App. 484, 999 P.2d 561 (2000), and the Oregon Supreme Court denied review, 330 Or. 363, 6 P.3d 1104 (2000).  The post-conviction trial court denied petitioner's petition for post-conviction relief on May 17, 2001.  Resp. Exhibits 126-128.  The Oregon Court of Appeals summarily affirmed, and the Oregon Supreme Court denied review.  Resp. Exhibits 138-140.  Petitioner filed his federal habeas corpus petition on February 20, 2003.[1]

In his amended Petition for Writ of Habeas Corpus, petitioner raises seven grounds for relief, but withdraws grounds

---

[1] Petitioner filed a second claim in July, 2001.  The trial court denied relief, and the Oregon Court of Appeals denied the petition for review on January 21, 2004.  None of the issues raised in that proceeding pertain to the case at bar.

3 - AMENDED OPINION AND ORDER

four and six. He alleges the trial court allowed the jury to rely on insufficient evidence to convict him of counts three and four of the indictment and wrongly deprived him of his confrontation rights by admitting his wife's hearsay statements against him. Petitioner also alleges he was denied adequate assistance of counsel in violation of his rights under the Sixth Amendment, and that his sentence is unlawful under Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. Washington, 124 S.Ct. 2531 (2004).

Respondent moves this court to deny relief as to grounds one, two, five and seven, as procedurally barred. Additionally, respondent argues grounds three and seven should be denied on the merits.

## DISCUSSION

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. See 28 U.S.C. § 2254(b)(1). A petitioner must seek discretionary review in the state's highest court in order to fully exhaust his state remedies. O'Sullivan v. Boerekel, 526 U.S. 838 (1999).

To satisfy the exhaustion requirement, a prisoner must fairly present his federal claims to the state courts. Baldwin

v. Reese, 541 U.S. 27, 29 (2004); Casey v. Moore, 386 F.3d 896, 911 (9th Cir. 2004). A "fair" presentation requires that the prisoner adequately alert the state courts to the federal nature of the claim. Duncan v. Henry, 513 U.S. 364, 365-66 (1995). This may be accomplished by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal." Baldwin, 541 U.S. at 32.

If a state prisoner procedurally defaults his available state remedies, federal habeas relief is precluded, absent a showing of cause and prejudice or that failure to consider the federal claim will result in a miscarriage of justice. Casey, 386 F.3d at 921, n.27; Carter v. Giubino, 385 F.3d 1194, 1197 (9th Cir. 2004), cert. denied, 125 S.Ct. 1406 (2005).

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), "a determination of a factual issue made by a State court shall be presumed to be correct...[,]" unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Habeas relief may not be granted on any claim that was adjudicated on the merits in state court, unless the adjudication: (1)resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

5 - AMENDED OPINION AND ORDER

federal law, as determined by the Supreme Court of the United States; or, (2)resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §2254(d).

A state court decision is not considered "contrary to" established U.S. Supreme Court precedent unless it "applies a rule that contradicts the governing law" in Supreme Court cases, or if it "confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 403-04 (2000). A state court decision is an "unreasonable application of clearly established federal law" if it is "objectively unreasonable." Id. at 409; Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

### A. Grounds One and Two

In grounds one and two petitioner alleges that his convictions for Assault in the Second Degree are unlawful because there was insufficient evidence to support the charges involving use of a dangerous weapon. Petitioner argues that although the victim suffered fractures to his right tibia and right femur, the medical testimony at trial did not support the conclusion, beyond

a reasonable doubt, that a weapon was used to inflict these injuries.

Respondent moves the court to deny habeas relief on these grounds on the basis that petitioner procedurally defaulted his available remedies. Specifically, respondent argues that petitioner failed to include these grounds for relief in his petition for review to the Oregon Supreme Court on direct review.

Petitioner argues, however, that since grounds one and two were raised to the Oregon Court of Appeals, and that court did not disclose whether its decision was based on state or federal law, the claims were never "adjudicated on the merits" and, therefore, this court must conduct an independent review of the record to determine whether the state court erred in its application of controlling federal law.

The Ninth Circuit recently addressed the definition of "adjudicated on the merits" under 28 U.S.C. § 2254(d). See Lampert v. Blodgett, 393 F.3d 943 (2004). However, I need not address the application of Lampert in the instant proceeding because its application is irrelevant to the question of whether petitioner procedurally defaulted his available state remedies.

Petitioner's argument, and the Ninth's Circuit's construction of the phrase "adjudicated on the merits" in Lampert, pertain to the appropriate scope of review to be applied by a federal habeas court to claims properly before it.

7 - AMENDED OPINION AND ORDER

Petitioner does not, however, offer any argument to excuse his procedural default of available state remedies as to grounds one and two. See Gatlin v. Madding, 189 F.3d 882, 888 (9th Cir. 1999), cert. denied, 528 U.S. 1087 (2000)(exhaustion requires petitioner to present claims to the state supreme court even if that court's review is discretionary). Accordingly, I decline to address petitioner's scope of review argument and, instead, deny petitioner's grounds one and two as procedurally defaulted.

**B.   Ground Three**

In ground three, petitioner alleges his Sixth Amendment right to confrontation was violated when the trial court allowed into evidence a hearsay statement made by petitioner's wife. Since petitioner and his wife were tried together, petitioner's wife was unavailable for cross examination at the trial pursuant to her Fifth Amendment privilege. Her statement came into evidence through a police detective, who testified as follows:

> A: She told me that Morris, her husband, took Daniel [the victim] into the bedroom, at which time she heard Daniel scream really loud, and then Morris came out of the bedroom and told her to do something with [the victim], that he couldn't do anything with him.
> ***
> Q: And did she tell you then what Morris Kopp did at that point, after he came out and said he couldn't do anything with Daniel?
> A: Yes, she did.
> Q: What did she say?
> A: She told me that he smoked a cigarette.

8 - AMENDED OPINION AND ORDER

> ***
> Q: Did you ask her if she had seen her husband shaking Daniel?
> A: She told me that in the past, she has heard what she thought was Morris shaking the baby, and that she'd actually confronted him about it, telling him that he could not do that.

Tr. (3/11/97) at 82.

At the time of petitioner's trial, the controlling law under Ohio v. Roberts, 448 U.S. 56 (1980), allowed admission of an unavailable witness's statement if the statement had "adequate indicia of reliability." This test was met when the evidence either fell within "a firmly rooted hearsay exception," or if it bore "particularized guarantees of trustworthiness." Id. at 66. Petitioner's wife's statement was admitted under the hearsay exception for "admissions against penal interest." The trial court ruled:

> Mrs. Kopp is not available and I think there's an indicia of reliability, they were made in her home, they were made soon after the criminal event, alleged criminal event took place. She was sober, the statement was voluntary. There seemed to be an indicia of remorse on her side. They exposed her to potential criminal liability. They were detailed. They seem like it fits the situation. There was no evidence of threats...

Tr. (3/7/97) 101-102.

In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that the Sixth Amendment right to confrontation precludes the admission of out-of-court testimonial evidence,

9 - AMENDED OPINION AND ORDER

regardless of its reliability unless the witness is unavailable and the defendant had a prior opportunity to cross examine the witness. After this case came under advisement, the Ninth Circuit held that Crawford applies retroactively to collateral proceedings. Bockting v. Bayer, 399 F. 3d 1010 (9th Cir. 2005), *amended on denial of rehearing by*, __ F.3d __, 2005 WL 1278821 (9th Cir. June 1, 2005).

There is no question that under a Crawford analysis, petitioner's right to cross examine his wife regarding the statement she made to police detectives on January 27, 1996, violated his constitutional right to confrontation. The violation of the right to confrontation is subject to a harmless error analysis. Id. at 1022; see also Brecht v. Abrahamson, 507 U.S. 619 (1993). In their amended opinion in Bockting, the Ninth Circuit clarified that, on collateral review, the harmless error analysis requires the court to consider whether admission of the hearsay statements had substantial and injurious effect or influence in determining the jury's verdict. Bockting, __ F.3d at __, WL 1278821 at 1; Brecht, 507 U.S. 623. Accordingly, I amend my original opinion, in which I applied the higher standard of harmless beyond a reasonable doubt.

Petitioner's own admissions to the police detective on the night his wife issued her statement undoubtably had a great

10 - AMENDED OPINION AND ORDER

impact on the jury. While the detective was interviewing petitioner's wife, petitioner "came out of the bedroom and he was crying, walked up to [his wife] and said, I shook Daniel once." Tr. (3/10/97) 83. The detective then asked petitioner to take him into the victim's bedroom and tell him what had happened the night Daniel fell unconscious. The police detective testified, in relevant part, as follows:

> A: He told me that once he got into the bedroom, Daniel wouldn't stop crying or quit crying, and that he got between the doorway and the crib, and when this, when he just wouldn't quit crying, at that point, he showed me that he, and told me, that he held Daniel out like this with Daniel's, with his hands underneath Daniel's arms, and shook Daniel back and forth like that, four or five times. And he said that this was probably hard, and that Daniel's head was flopping back and forth while he was doing that, and when he was done doing that, he then took Daniel and tossed Daniel into the crib, at which time the side of Daniel's head hit the side railing of the crib.
> ***
> Q: Did he tell you what he did after he threw Daniel in the crib?
> A: Yes. Told me that he turned around and walked out of the room because he could tell that he was losing it.
> ***
> Q: And did he admit that he'd shaken Daniel like that before?
> A: Yes, he did.
> Q: What exactly did he say about that?
> A: Told me approximately three weeks earlier that he'd shaken Daniel in the same manner as what he'd described to me, and he told me that he'd done this because Daniel was crying and he just lost control.
> Q: Were those his words, lost control?
> A: Yes.

Id. at 84-87.

11 - AMENDED OPINION AND ORDER

Moreover, multiple medical experts testified that none of the victim's injuries were consistent with accidental injury, but they were consistent with violent shaking and having the infant's head slammed into a crib. Tr. (3/18/97) 26, 37-38, 67-68. For instance, William Gerald Bennett, M.D., a pediatric radiologist, testified as follows:

> There is no accident that I know of that a child can be subjected to- and by that I mean being dropped on a hard surface from five feet in the air, rolling off a couch, being in an automobile accident, that will produce acute and chronic subdural hematomas. That injury is a result of violent shaking, impacting the skull with a solid object or a combination of the two. It is not typical of an accidental injury.
>
> The injury to the femur is not an accidental injury. This child was not ambulatory. This was an infant that was not crawling. And this injury was inflicted by someone else. And it is not typical of being dropped, of a car accident, or of any kind of accidental trauma.
>
> The fracture of the tibia, by it's [sic] nature being oblique, was caused by the child being grabbed by that extremity and jerked and twisted with that leg being used as a lever. And it is not consistent with any accidental sort of injury.

Id. at 37-38.

Further, petitioner's 14-year-old stepson, Chris Neider, provided extensive testimony regarding the abuse he witnessed petitioner commit against the infant. Chris testified that petitioner screamed at the infant multiple times a day to "shut up" or to eat, force-fed the infant, blew forcefully into the

12 - AMENDED OPINION AND ORDER

infants face causing momentary lapses in breathing, repeatedly jerked the infant's legs, and shook him on multiple occasions causing the infant's head to "flop back and forth." Tr. (3/11/97) at 38-47. Chris also testified that on the night the infant was taken to the emergency room, he heard petitioner tell his wife if she "didn't take care of that kid, he was going to kill him." Id. at 46.

In light of petitioner's admission to far more egregious conduct than that contained in the hearsay statement of his wife, the testimony of petitioner's stepson, and the medical evidence documenting the injuries suffered by the victim, I conclude that petitioner's wife's statement that she heard, but did not see, petitioner shaking the victim did not have a substantial and injurious effect or influence in determining the jury's verdict. Accordingly, I conclude that petitioner's wife's statements, though admitted against him in violation of his Constitutional right to cross exam her, resulted in harmless error.

### C. Ground Five

In ground five, petitioner contends his Sixth Amendment right to effective assistance of counsel was violated because his trial attorney failed to call an expert witness and other witnesses, failed to file a severance motion, failed to file a

motion for change of venue, and failed to alert the court that petitioner's co-defendant allegedly tampered with a witness.

Respondent argues these claims were raised in a procedural context in which they would not be considered, so this ground for relief is procedurally defaulted. The severance motion was not raised at the post-conviction court, or on appeal. Petitioner's motion for change of venue and tampering with a witness was raised at post-conviction, but not on appeal. Thus, only petitioner's claim that he was denied effective assistance of counsel vis-a-vis his defense attorney's failure to interview and subpoena expert and other witnesses was "fairly presented." See Resp. Exhibit 111 at 3-4; 134 at 5-6; 138 at 5.

Petitioner has made no showing of "cause and prejudice" or that a "fundamental miscarriage of justice" occurred. See Edwards, 529 U.S. at 451; see also Coleman v. Thompson, 501 U.S. 722, 750 (1991). Accordingly, all claims under petitioner's fifth ground for relief are barred, except petitioner's claim that his trial counsel failed to call expert witnesses and other witnesses.

In order to prevail on a claim of ineffective assistance of counsel, petitioner must prove that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional

14 - AMENDED OPINION AND ORDER

errors, the result of the proceeding would have been different. Bell v. Cone, 535 U.S. 685, 695 (2002); Williams v. Taylor, 529 U.S. 362, 390-91 (2000); Strickland v. Washington, 466 U.S. 668, 687-88 (1987). In evaluating proof of prejudice, this court "must consider the totality of the evidence" before the jury. Strickland, 466 U.S. at 696. A court may properly address the prejudice prong first, without considering whether counsel's conduct was deficient. Villafuerte v. Stewart, 111 F. 3d 616, 630 (9th Cir. 1997), cert. denied, 522 U.S. 1079 (1998).

Petitioner contends that if his trial attorney had called unspecified expert witnesses, along with his mother and two family friends, their testimony would have revealed that the victim's injuries resulted from a birth defect or bone disease. Petitioner does not elaborate on this theory in his brief. However, in his post-conviction deposition on December 20, 2000, petitioner explained that while he knew of no expert witness who would have corroborated his degenerative bone disease theory, he believes his attorney should have sought one out. Resp. Exhibit 114 at 9. Petitioner stated that his belief is founded on his mother's lay opinion that the victim was born with birth defects because he was always fussy and uninterested in eating. Id. at 12-13, 18-20.

15 - AMENDED OPINION AND ORDER

Notably, at trial, medical experts directly refuted this possibility. Dr. William Bennett testified that the victim "did not have any of the radiologic signs of a congenital disorder of bones known as osteogenesis imperfecta in which the bones are congenitally fragile." Tr. (3/18/97) at 38. Dr. Bennet went on to say, "Fractures and osteogenesis imperfecta are not like the fractures in this child. This child's fractures are not fractures you would expect that a child with brittle bone disease or osteogenesis imperfecta [sic]." Id.

The state post-conviction trial court ruled that petitioner had not been denied the right to effective assistance of counsel under Strickland. Resp. Exhibit 126 at 4. The court found (1)that petitioner had presented no evidence that would clearly have a tendency to affect the result of the prosecution; (2)trial counsel's representation, and presentation of issues, evidence and defenses were within the scope of tactical choice; (3)petitioner failed to present evidence of witnesses and the testimony of those witnesses that would support petitioner's contentions, as required by Oregon law; and (4)trial counsel's investigation and preparation, including witnesses and subpoenas, was proper under the circumstances then existing, and within the scope of tactical choice. Id. at 4-5.

These findings are entitled to deference under 28 U.S.C. §2254(d) and (e)(1). I find that petitioner has not shown these findings to be "objectively unreasonable" by clear and convincing evidence. Mere speculation at to what unidentified expert witnesses might have testified to is insufficient to demonstrate that the state court's findings of fact were unreasonable or that its rejection of petitioner's ineffectiveness claim was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, habeas relief is not warranted under ground five of petitioner's motion.

**D. Ground Seven**

In ground seven petitioner alleges that his sentence is unlawful under Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 124 S.Ct. 2531 (2004), because the sentencing court allegedly relied on facts not found by a jury, and not admitted by defendant, to support upward departure and consecutive sentences.

The Supreme Court has not made Blakely retroactive to cases on collateral review. Cook v. United States, 386 F.3d 949 (9th Cir. 2004). Similarly, the Court has not mandated that Apprendi be applied retroactively on collateral review. Id.; see also United States v. Sanchez-Cervantes, 282 F.3d 664, 671 (9th Cir. 2002). Of course, even if retroactive application of Apprendi

17 - AMENDED OPINION AND ORDER

was directed, petitioner's <u>Apprendi</u> claim would still be procedurally defaulted because it was not raised in state court. Thus, ground seven of petitioner's petition for habeas relief is rejected.

/ / / / /

/ / / / /

/ / / / /

## **CONCLUSION**

Based on the foregoing, petitioner's habeas corpus petition (#2) is denied.

IT IS SO ORDERED.

DATED this _7_ day of June, 2005.

/s/   Malcolm F. Marsh  
Malcolm F. Marsh  
United States District Court Judge
